855 F.2d 887
 272 U.S.App.D.C. 248
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
Wayne M. HARGROVE, Appellant.
 No. 87-3012.
 United States Court of Appeals, District of Columbia Circuit.
 Sept. 2, 1988.
 
 Before SPOTTSWOOD W. ROBINSON, III, D.H. GINSBURG and SENTELLE, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came on for consideration on appeal from the United States District Court for the District of Columbia, and was briefed and argued by counsel.
 
 
 2
 Upon consideration thereof, and for the reasons expressed in the accompanying memorandum, it is
 
 
 3
 ORDERED and ADJUDGED, by the Court, that the judgment of the District Court be, and hereby is, affirmed.
 
 MEMORANDUM
 
 4
 Hargrove was convicted of possession of a controlled substance with intent to distribute it. See 21 U.S.C. Sec. 841(a)(1982). He challenges the admission into evidence of three kilograms of cocaine found in a brown shoulder bag which he had left in an outdoor motorcycle parking area of an apartment building in which he was a guest. Hargrove's sole argument on appeal is that this evidence was obtained by means of an unconstitutional search and seizure, and therefore should have been suppressed.
 
 
 5
 Hargrove ceded any Fourth Amendment protection he may have had in the bag and its contents when he left them at an exposed location in the parking area. To be sure, "[a] suitcase or briefcase is property of a kind in which the owner or bailee normally has a strong expectation of privacy," but "such an expectation can be given up." United States v. Oswald, 783 F.2d 633, 666 (6th Cir.1986). And "a search warrant is not required where a person has 'so relinquished his interest in the property that he no longer has a reasonable expectation of privacy in it at the time of the search.' " United States v. Sampol, 636 F.2d 621, 683 (D.C.Cir.1980) (quoting United States v. Jackson, 544 F.2d 407, 409 (9th Cir.1977). This result obtains when "the objective circumstances provide an inescapable inference that the ... materials ... were intentionally abandoned." United States v. Sampol, supra, 636 F.2d at 683.
 
 
 6
 The undisputed facts of record make clear that Hargrove surrendered any reasonable expectation of privacy in the bag. While attempting to evade police surveillance, Hargrove entered the parking area, placed the bag between a parked motorcycle and the exterior wall of the apartment building, and then departed. The parking area was separated from an abutting public alley only by a length of chain hung on three short posts. The alley was wide enough for vehicular traffic, and was also used by pedestrians as a shortcut between two streets. The bag remained in plain view from the alley and was not secured in any way. Following Hargrove's arrest on the street a few minutes after he left the parking area, a police officer drove his car into the alley, spotted the bag, and seized and searched it. These circumstances doom to failure any contention that Hargrove retained a reasonable expectation of privacy in the bag. See California v. Greenwood, 56 U.S.L.W. 4409, 4410 (U.S. May 16, 1988) (expectation of privacy in garbage diminished where garbage bags left on or at side of street were readily accessible to members of the public).
 
 
 7
 Hargrove points, however, to the fact that the motorcycle parking area was reserved for use by residents of the apartment building. We fail to see how this strengthens Hargrove's position, for the outcome does not turn on traditional notions of property law. See United States v. Tolbert, 692 F.2d 1041, 1044 (6th Cir.1982). Whatever privacy expectations might ordinarily be associated with property interests in the parking area were dissipated by the openness of the area to full public view and the absence of measures to restrict entry. The bag could readily be seen by anyone in the alley--a circumstance that some might take as an invitation to appropriate it. Unlike a nearby parking lot provided for automobiles of building residents, the motorcycle parking area was not enclosed by a fence. A sign on the motorcycle lot read "Private Parking," which might deter nonresidents from leaving vehicles in the chained-off area, but it could not prevent outsiders from peering in or entering on foot.
 
 
 8
 It is suggested that Hargrove did not mean to abandon the bag but rather to conceal it for later recovery, thus demonstrating his determination to retain a privacy interest therein. When, however, a person's conduct " 'is transparently an abandonment of the tight grip of ownership;' the abandonment is not negated by 'the feeble hope of reacquisition.' " United States v. Oswald, supra, 783 F.2d at 667 (quoting United States v. Williams, 569 F.2d 823, 826 (5th Cir.1978)). Hargrove may indeed have entertained some notion of later regaining possession of the bag, but the idea of any privacy expectation concomitant therewith plainly would be unreasonable in light of its highly visible location. One of life's realities is that unsecured property left in close proximity to a public thoroughfare is almost certain to attract the unwanted attention of passers-by.
 
 
 9
 We perceive no basis for disturbing the District Court's denial of Hargrove's motion to suppress and its admission of the disputed evidence at Hargrove's trial. When Hargrove left the bag in the parking area, he relinquished "any legitimate expectation of privacy in the invaded place," Rakas v. Illinois, 439 U.S. 128, 143 (1978), and with it any protection by the Fourth Amendment against its seizure and search.